So with that, Counsel, you want to step up? Oh, last thing, and Mr. Orr, you're not splitting time, correct? And you're the only one arguing today? Yes, sir. Your co-counsel's not arguing. Okay, got it. Thank you. May it please the Court, good afternoon, Your Honors. John Smeltzer for the United States. Your Honors, the final decree in the Snake River Basin Adjudication, or SRBA, confirmed the United States' ownership of thousands of state law water rights for livestock use on federal grazing lands. The United States filed this suit and this appeal to protect those water rights and their senior priority dates for Idaho ranchers who utilize federal grazing lands. The forfeiture of such rights under Idaho's new stock water forfeiture statute, Idaho Code Section 42-224, would result in a loss of priority for the Idaho ranchers who use those lands and other adverse impacts on the grazing program. The United States acknowledges that its state law stock water rights are subject to loss under Idaho's longstanding rule of forfeiture for non-use. The termination of grazing use on any allotment with a pertinent state law water rights would constitute a non-use for purposes of the forfeiture statute. But Idaho's new stock water forfeiture statute aims to divest the United States of decreed water rights notwithstanding ongoing use by federal permittees, the same use under which the rights were perfected, maintained, and adjudicated. Counsel, the SRBA, it didn't, of course, explicitly say that the United States decreed stock water rights were based in its permittees beneficial use. So, I mean, how can we really be sure what the basis was for that adjudication? And does it matter at this point? Your Honor, two responses. First, it's the only beneficial use, right, during the time. These are state law stock water rights. So they can only exist if they were perfected by use and if they were maintained by use. The SRBA court, the decree court, could not have confirmed the United States ownership of these rights without determining that there was a beneficial use, right, under which they were perfected around the time of the priority dates and that those rights were maintained by beneficial use for the period up until the rights were decreed, right? The rights were confirmed as existing on the date of the decree, right? So if you're in 2001 when the rights were decreed in the partial decrees, the court has to determine first that they were vested, you know, back on the time of the priority date, but also that they were maintained for that entire time. There's no dispute that the United States wasn't running its own cattle, right, its own livestock on these lands. These were always lands that were dedicated to permitted use. There's no other use that qualifies as permitted use. It's, I think, relatively straightforward to understand by necessary implication that's the only use under which the rights could have been decreed. Counsel, I take your point because my understanding is it's undisputed the U.S. never owned its own cattle, right? And then the U.S. tried to argue that it could qualify beneficial use through wildlife and through ownership and management of lands, and those bases were rejected. And so I think you're saying by implication then the only thing that was left was permittee use as agents of the United States. Right here we're only talking about livestock rights, right? Livestock use, permittee watering of livestock. And then I think your argument has to be that they were impliedly agents of the U.S. during the relevant time period. They were authorized users. There was an agency relationship in that sense. But ultimately our argument also, Your Honors, is that even if the state is right that we can't look behind the decree at all, we just have to look at the face of the decree, that there's no dispute that the United States was confirmed the owner of the water rights. Correct. I'm not done with my question, though. So I understand the SRBA decreed the U.S. these stock water rights, and your contention is the only possible factual basis is through the permittee's watering of their livestock, and that I assume you have to argue that there was an implied agency relationship between the U.S. and the permittees, is that correct? Was there any express agency agreements predating the 2017 SRBA decree? No. The idea of express agency agreements came out of the mandate in the state law. Okay. So before 2017, or before the Joyce decision, or before the SRBA final decree in 2014, there was no U.S. policy or practice of obtaining express agency agreements from its permittees. That's correct, Your Honor. Is that in the record, or is that undisputed at this point? I believe it's undisputed, Your Honor. I mean, I can't point to any agency agreements that predate, right, because it's not something we were doing. I know that the state has pointed us to express agreements, but they all seem to post-date the amendments at issue, and essentially the U.S. seems to be going out and getting them when it's presented. My understanding is that that sense of need was an abundance of caution in relation to the statute. But the other point I wanted to make is with respect to ownership. Once ownership is established, proving beneficial use by the owner is straightforward and simple, and the court didn't even necessarily go back to the determination of the beneficial use that was required to prove ownership, right, because under a forfeiture statute or an administration context, you're not going back and relitigating ownership, or at least you shouldn't be. I mean, that's part of the problem with this case. The state is trying to go back and litigate ownership. But with respect to use, you have to start with the undisputed fact that the United States owns the water right, and that makes a difference. All right, I just want to make sure I understand your argument, because under Joyce, it's very clear that acquiring the stock water right has to be done either through the U.S. watering its own livestock or the permittee acting as its agent. Are you arguing that once it was acquired, there didn't need to be an agency relationship anymore? No, that's not what we're saying, Your Honor, is Joyce was a case about water rights acquisition, about ownership, right? What the Idaho Supreme Court held in Joyce was that the use of water by a private rancher on the public domain before there was a permitting program, right, was a use that was in favor of the private rancher obtaining a water right. So then the private rancher has a water right, and then the United States starts a permit program, right? And so in that context, when the United States manages the regulated grazing of the Joyce Ranch, they already have a water right they're using, right? What we're saying in the context of a permit program, right, where the water use comes after the permit, you can apply the agency then in that context. That Joyce is different because Joyce acquired their water right before they were a permittee. And you're saying for ranchers who did not have an independently acquired water right, then when they became a permittee, that was the first time they started watering their stock on U.S. land. Then in that case, there's an implied agency relationship. Well, that was the basis on which they were adjudicated. But we're also saying, right, that ownership was adjudicated. And even if you assume that you can't look behind the facts, right, and that the only thing you can take from the decree is the United States owns its rights. Suppose the United States watered its own livestock and got a right. What we're saying is under Joyce, it's clear you could still use your right through an authorized agency relationship, right? So if you're the owner of a water right, you always have the ability to authorize somebody to use it. And in that context, the default rule is in favor of the owner, right? There's no suggestion that if the owner, right, the United States owns the land. The United States owns the appurtenant water right. In that context, where we permit a grazing use on the land, right, forget about how we acquired our water rights. But if we own the water rights, we own the land, and we're permitting the use of the land, that's use, right? That's all you need to know. Thank you. That's what I was asking. You're going to get the answer to my question now. Thank you. Sorry. I just wanted to make sure. So you're saying once the U.S. owned the right, it could allow its permittees to use its right, and that would qualify as beneficial use whether they were acting as an agent or not. Well, what I'm saying is there's an agency relationship in the permit relationship, right? So you're implying the agency relationship from the permit relationship. What I'm saying is you don't need subjective intent of the permittee, right? You don't need them to say, we agree we're using your water right. All you need is the United States authorizing use. That is use. An authorized use of property is a use of water. Now, the state has argued that the decree itself limits the use to the United States because the United States is the title owner of the water right. They argue in the brief that you've got the decree saying the BLM holds the rights on BLM lands or the Forest Service holds the rights on Forest Service lands. Therefore, only the United States can use this water right. That's not property law, right? That's not the way property law works. I hold title to my house. I can let other people use it. I hold title to my car. I can let other people use it, right? When they use it under my authorization, they are exercising my right of ownership. So with respect to the decree itself, right, it doesn't limit rights. And there's no Idaho law that supports the idea that an appropriator cannot let somebody else use the water. That's contrary to Joyce itself. The state cites a couple cases, Albreston versus Wood River Land Company and Aberdeen Springfield Canal Company. Both of those cases are cases that say the appropriator must use the water right or will forfeit it or something to that extent. And so Idaho seizes on the idea that the cases use the word appropriator to say, aha, it's got to be the appropriator, and in this case it's got to be the United States. But those cases aren't agency cases, right? They're just setting out the general law of forfeiture, and they're saying that the appropriator must use the water right. They don't say you can't use it through an agent. I didn't really understand the state to be arguing that you couldn't allow a permittee to use the U.S. water right as an agent of the U.S. I understood them to be arguing that they weren't your agent. Well, if you look at their argument on prior exclusive jurisdiction, Your Honor, they're saying that the decree itself, by saying United States, means that if anybody else uses it, it's not a use of the water right. And they also cite the case of the Pioneer Irrigation District, which was a case where there was a remark placed on the right where it says the United States holds rights for the benefit of others, for the benefit of the landowners in that case, and that's a limitation on the United States right. If there were that limitation on the United States rights here, it would mean the United States couldn't graze its own cattle, right? But because the rights were named or adjudicated in the name of the United States, that's as broad as you can get, right? It means we can utilize the rights. The state also points, again, to Joyce and to a case called McInturff v. Shippey for the idea that, you know, a tenant or a landlord that lets a tenant use water, that doesn't establish an agency relationship. But McInturff, just like Joyce, was a case about ownership, right? It was a case about what you can imply in the context where you don't know who owns the water right and you have a party using water on somebody else's land. What we're saying is once ownership is established, there's really nothing more you need to show. And Idaho law doesn't stand for the proposition that you need to show anything more. Idaho law stands for the proposition that it's difficult to forfeit water rights. You know, forfeiture is disfavored. And here, in this case, we clearly have a situation where the United States has authorized permittees to use the land and the appurtenant water rights. That's enough to maintain the water rights as they were decreed. Now you have the state stepping in with this new forfeiture statute, which has a new substantive rule that says you need federal livestock or you need an express agency agreement. And Idaho said when they enacted the statute, what we're trying to do is make sure that we can have forfeiture, right, of water rights that were acquired, in Idaho's view, contrary to Joyce. What they're trying to do is to go back and relitigate the ownership, right? They're trying to get back to that ownership issue by using this new standard and by reopening Joyce. When they were reopening these water rights to relitigation under the Joyce standard. And, you know, they told you specifically that that's what they're intending to do with respect to their statute. I mean, that's in the statement of intent. And as we described in the brief, there's really no nondiscriminatory reason for this, right? The reason they enacted the statute at this time was as a package because the Idaho legislature decided that because Joyce followed, right, the adjudication of these water rights in the preliminary decrees, that there wasn't an opportunity for those rights to be litigated. So they had to create a mechanism to go back and relitigate this question of ownership, which is exactly what they did through the statute. It's discriminatory against the United States. Counsel, if we were to agree with you that 42224 violates the statute, did it reach any other issues concerning that statute or does that portion of the case, would that portion of the case end with that determination? Your Honor, we raised four grounds where we think the statute violates contract clause, retroactivity clause, the Idaho Constitution, and the parent amendment. If this court wants to take the simple route and just determine it's discriminatory under the supremacy clause, we're good with that. If the court finds for some reason that the supremacy clause doesn't apply here, we would ask, obviously, that you— They're each independent grounds for— Each independent, yeah. Okay. Thank you, Your Honor. Thank you, Counsel. And Ms. Dodds, we'll go ahead with five minutes for him. And we may give you a little more depending on what happens over here. Thank you, Your Honor. Michael Lohr for the State of Idaho and the Idaho Department of Water Resources. Matthew Weaver in his official capacity as Director of the Department. We're appellees and cross-appellants, as you know, and as are the Idaho Legislature and several Idaho ranchers who are going to be directly impacted by the outcome of this case. Joyce Livestock Company, the L.U. Ranching Company, and the Pickett Ranch and Sheep Company. I plan to reserve five minutes for rebuttal. Your Honor, this court recognized in the Board of Water Commissioners' case, 893 F. 3rd 578, that there is no federal water law. Fundamental principles of federalism vest control of water rights in the state and decreed rights are administered according to state law. In this case, the United States argues that the Idaho law governing water right forfeiture discriminates against the United States and retroactively impairs its decreed water rights. The United States is wrong. Now, the District Court issued a mixed decision, so I'll summarize our position in these appeals. First, the District Court correctly held that Idaho Code Sections 42, 222, and 224 are facially constitutional. But the District Court lacked jurisdiction over the United States' claims that these two statutes unconstitutionally impair the decreed stock water rights, 68 of them, that are at issue in this case. The District Court correctly declined to address the United States' sovereign immunity claim, and the District Court erred in holding that Idaho Code Section 42-1132B is facially unconstitutional. And I think I can address— Counsel, I think because there's a lot to cover in limited time, I think we understand your position on each of the District Court's rulings, so I'm going to fast-forward to a question that I have about the U.S.'s— I mean, excuse me, about your position. And on the— I understand from your brief that you agree there could be an agency relationship between the U.S. and the permittees, and one way they could demonstrate that is through an express agreement, written agreement establishing an agency relationship. You argue in your brief that it's not impossible for the U.S. to show an implied agency relationship. What is your position? Can the U.S. establish an implied agency relationship through the permit alone? Not through the permit alone, unless the permit has something in it that would qualify as agency language. But the United States isn't arguing that here, at least not as I understand it, and the permits aren't in the record. Well, I guess the permit relationship. Can that be an implied agency relationship for this purpose? Not insofar as the permit simply allows access to federal land. Use of federal land is not the same thing as using water. The Supreme Court severed federal lands from water a long time ago, and the state law controls the water. Now, that's why McInturff v. Shippey is so critical here, because the Idaho Supreme Court expressly addressed that point and said, merely allowing the tenant to use the water on the land is not sufficient to establish an agency relationship between the tenant and the landowner. And that applies directly here, where the United States is arguing, I believe counsel just said, hey, we let them on the land. That's all that matters. Now they're our agents. That's contrary to Idaho law. Now, there may be some other evidence the United States could develop if this case was allowed to go forward showing an agency relationship. Fair enough. But that should be allowed to develop in the appropriate proceedings before IDWR or in the Twin Falls District Court. But to argue here that the permittees are acting as agents, that's just contrary to controlling Idaho law. And what is your authority for that? I'm sorry, Your Honor. What would you cite for that? To say that the permit, they cannot imply the agent's relationship based on the permit relationship. I don't know if it's impossible, but what I hear the United States saying is the mere fact that we allow them on the land through a permit establishes that agency relationship. Now, as far as whether the language of the permit, an individual permit is sufficient to do that, that's a factual question that would have to be developed in each individual case. Well, if there was express language, then it would be expressed. So I guess then there's a possibility of implied agency, correct? Correct, if there was. But that's not in the record, and that's not what the United States is arguing here. Repeatedly in their brief, they're saying, and I believe Mr. Smelter said here, we let them on the land, that's it. They're using our water right because we let them on the land. That's not the way Idaho water law works. Okay, I thought he argued that they are their implied agents. If they are arguing it, that you would say that's incorrect though as a matter of law. I'm sorry, Your Honor, I'm old and I'm not. I understood him to be arguing that the permittees are implied agents of the United States when they are permitted to graze their livestock on the U.S. land. Assume for the moment they are making that argument. You are arguing that's incorrect as a matter of law, that they cannot? Are you arguing that they cannot have an implied agency relationship with their permittees? I'm not saying they cannot. Okay, can they prove that through the permit and the relationship alone? What else are you saying they need more? They could possibly prove it if that evidence was in the record or even through testimonial evidence of the permittees saying, yeah, we're acting as agents, we're maintaining their rights. But that's not what the United States is arguing here. They're saying just the fact that we allow them onto the land, which they do through a permit, that's enough. It doesn't matter what the permit says. It's the fact that we let them on the land, and that is not enough under McInturff v. Shippee. Counsel, if you were going to summarize what the purpose behind 42-224 is, what is the purpose of that law? Well, as the district court held, it's a procedural statute. It lays out an orderly procedure to address allegations that a stockwater right has been lost to forfeiture pursuant to the substantive standards of Section 222. Now, the United States is arguing, as I understand it, that Section 224 discriminates because it creates, quote, a new substantive standard for forfeiture of its stockwater rights, that is, a standard different from the one that was in effect when the rights were decreed. Now, I'll note the United States has never identified what that allegedly old standard was, but that doesn't matter here because Section 224 expressly incorporates the substantive forfeiture statute 222, which is over a century old, which the United States no longer challenges. And under Section 222, and this is express language of the Idaho Supreme Court, the question is whether, quote, the appropriator claiming under the decree, which in this case is the United States, fails to apply the water to beneficial use. And that's from the Albertson case Mr. Smeltzer referenced, 231 Pacific Reporter, page 422. Now, that was law long before commencement of the SRBA. It was Idaho law when the United States claimed its stockwater rights and when they were decreed in the SRBA. Nothing in 224 changed that longstanding rule. Now, in addition to that, Idaho law has also long recognized that the use of water by an agent of the appropriator constitutes use by the appropriator. Now, that's clear from Joyce Livestock's discussion of the 1930 Idaho Supreme Court decision in First Security Bank of Blackfoot v. State, 291 Pacific Reporter 1064. And nothing in Section 224 changed that rule either. Now, finally, the plain language. Let me jump in just real quick just to help me understand. I get what you're saying that this was always the law effectively and that 224 is just another way of executing it, I think is the argument you're making. Then why did the Idaho legislature need to pass 224? If it was always what the law was, why did that come into play? Well, I think as the district court pointed out, it establishes a procedure. It's a way to address an issue. The legislature can do that. It has plenary authority to do that. Now, that doesn't change the substantive law. Forfeiture could have still been addressed outside of that procedure, but the legislature has the authority, plenary authority, to establish a procedure for a statutory cause of action, which is what forfeiture is. Yeah, no, I'm following what you're saying. It just helps me understand. But it seems to me that before 224, the United States could lose an interest in land one way, but then after 224, they could lose land in a different way. And if I'm right about that, then why wouldn't that be a substantive change? Because literally there's another way they could lose the land, the rights to the land, I should say. First of all, Your Honor, this has nothing to do with land. This is about water. Fair enough, but there's grazing land which is attached to the water, so the water rights. They are not attached to the water rights. The Supreme Court, and this is in Joyce Livestock, the United States Supreme Court said that in 1877, Congress severed the public domain from the waters. And I may have used the wrong terminology. The point, though, is the same, is that whatever the right was, there was one way they could have lost it before, and now there's more than one way they can lose it. So there's a right involved, and now Idaho is saying, now you can lose it this other way. If they can lose a right differently now than before, why isn't that a substantive change to the law? There's no difference. It's the same substantive standard. It's a procedural difference, and as we cited in our brief, I think it's the Idaho Supreme Court's Griffith case. In that case, the court said no one has a vested right in a particular mode of procedure so long as there's due process provided, and this statute does. It provides it through the IDWR process, through the judicial process, and if they don't like what they get from the Twin Falls District Court, they can appeal to the Idaho Supreme Court and on to the U.S. Supreme Court. It's just a procedural difference. It doesn't change the way in which the right is forfeited. It still has to be lost for failure of the decreed appropriator or an agent of the decreed appropriator to use water during that five-year period and in the absence of any applicable defenses. Council, Joyce was decided in 2007, right? I think that's right. Joyce said the U.S. cannot claim constitutional stockwater rights based on its ownership and management of the land, and it can only acquire constitutional stockwater rights through permittees use if the permittee was acting as an agent of the United States, right? And it said the U.S. wasn't arguing that Joyce was acting as its agent, so therefore it wasn't in that case. I don't think it went into the issue much more than that, other than noting the U.S. did not argue there was an agency relationship. Is that correct? I think so, as I understand it, Your Honor. So between 2007 and 2014, when the SRBA decrees were finalized, did Idaho or any of the ranchers at issue in this case challenge the U.S.'s constitutional stockwater rights claims on the ground that no one was using the water, no permittee was using the water as an agent of the United States? Well, Your Honor, I'll say first, I don't think that's in the record, but to my knowledge, there was no formal legal action taken, but there was a lot of talk between the U.S. and the State during that period, I'll be honest. Okay. But there was, you cannot point me to an objection, a challenge, a case that was filed between 2007 and 2014? Again, it's not in the record, but as I stand here, I can't think of any, no.  If I can maybe turn to subsection 4 of 224 again, that's the one the United States really focuses on, and another allegation here is that that subsection discriminates against the United States by requiring, quote, a written agency agreement in order to avoid forfeiture. I'll submit that the plain language of this provision, that's contrary to the plain language, all it does is it forbids the director from issuing a show cause order when he has written evidence of an agency relationship between a governmental landowner and a lessee or a permittee using the land. It imposes no burdens on the United States. What it does is it provides a procedure for weeding out early in the administrative portion of the proceedings. We've read the statute, counsel, and I'll be honest, I think part of the difficulty here, what your opposing counsel argues is we have to read that provision in the context of the statutory scheme, which includes section 501. It includes the provisions that were struck down as unconstitutional by the district court in this case, and it seems to me that the purpose of this statutory scheme as a whole was to divest the U.S. of these stock water rights that the state contends were essentially mistakenly decreed to it, and it says that a rancher is not unwittingly acting as an agent of a federal agency simply by grazing livestock. So it seems to me that if the U.S. were to go through these forfeiture petition proceedings with what everyone acknowledges, never having grazed its own livestock and never having obtained an express agency agreement before essentially the orders to show cause were issued, that the inevitable result would be that they would be divested of these stock water rights. Well, Your Honor, there's a lot there I'll try to address.  I'll try to address it. It's not inevitable. Okay. That's established by the record. There were about 120 stock water rights challenged. Only 68 of them were the subject of show cause orders. Well, some of them were found to be based on federal law and some were found to be outside of the area, but the ones that were actually at issue were granted based on the state constitutional acquisition method. So were some of the ones that were dismissed for which show cause orders were not. But anyway, turning to 501, the statement that the ranchers don't act as unwitting agents is what McInturff v. Shippey says. There's nothing there that isn't solidly grounded in McInturff v. Shippey where you don't say someone's an agent just because they happen to be on your land. It doesn't work that way. Now, in 501, the legislature also said forfeiture should be pursuant to 222 and 224 Idaho law. That was exactly what the Twin Falls District Court said in the final unified decree. If you look at the first volume of our supplemental excerpts of record at page 216, it says these rights are subject to forfeiture under Idaho law. There's nothing different there. And then finally, if you look at 222 and 224, taking it in context, there's no reference to 501 at all. It plays no role in a forfeiture proceeding. It's an inoperative statute, statement of legislative intent. But when we look to what the legislature intended in the forfeiture proceedings, we look to the language they actually enacted, not some allegations of illicit motive to talk about the O'Brien case that the district court talked about. Now, I don't think that it's necessarily inevitable that any stock water rights will be forfeited here. The United States will have the opportunity to show that there's an agency relationship through documents other than a written signed agreement and through testimony. And if that doesn't exist now, they can go out and get them. There's nothing to prevent them from doing that. Forfeiture is not inevitable, but this does establish an orderly procedure for addressing the question. Pursuant to the decree, and it's not... I'm going to reserve the rest of my time in a minute here. We're not challenging ownership. The water rights were decreed in the name of the United States and the United States alone. They're valid rights, but they have to be maintained in accordance with Idaho law, which requires the decreed appropriator or an agent to make use of them. Counsel, I'm going to give you a little bit more time. Did you want to talk about your cross-appeal now? Because otherwise, he won't really have a chance to respond to it. And I'll give you more time, so don't worry too much about the time. Okay, well, I think we might have covered part of it, Your Honor. So let me go through it here quick. Okay. The United States as applied challenges, that's our cross-appeal, that the district court lacked jurisdiction over that because it raises questions of the nature and substance of the water rights. The United States claims that they were decreed for the use or benefit of federal grazing permittees and therefore not subject to forfeiture so long as permittees use the water. And as I think some of your questions pointed out, the decrees just don't back that up. There's nothing about the permittees in the decrees themselves. You would have to imply something into the decrees, something beyond the four corners. And under black-letter Idaho water law, and I'm referencing cases that's cited in our briefs, such as the Black Canyon case, the Rangan case, the City of Blackfoot case, the Whitaker case, the decree defines the right. And if you argue there's something in the right that's not in the decree, that's a collateral attack by definition. And the reason it's so important in water law is because the whole point is to finalize the decrees and end these fights, which has been going on for decades. So in this case, what the United States is doing is it's stressing its claims about the nature of the water rights, stressing them up in constitutional livery in order to obtain jurisdiction in this court. But under the TMOAC case, I'm sorry, TMOAC case, once a state court has acquired jurisdiction, the federal court can't interfere and exercise jurisdiction over that same race. The race here that we've been arguing about almost this whole time here is the United States-decreed stock water rights. The Twin Falls District Court first acquired jurisdiction over them, issued partial decrees, and retained jurisdiction to resolve any question about the nature of those water rights. It has exclusive jurisdiction over these questions here. Does this address your arguments about 113? 113, well, in brief, Your Honor, the district court held it was facially unconstitutional because it only applies to in-stream stock water rights associated with federal lands. That's exactly what Joyce held, that in-stream stock water rights associated with federal lands and owned by grazing permittees are pertinent to their properties as a matter of Idaho law. Now, the district court held that that's discriminatory, but if you look at Joyce, it was based on long-standing federal and state law. It didn't discriminate against the United States in any way at all. It just settled a question that had arisen under Idaho law. The United States did not appeal that case, and it's binding. It's binding authority. Section 113.2b memorializes at least one aspect of that holding, that privately owned stock water rights associated with federal lands are pertinent to the rancher's properties. Because it can be constitutionally applied in that instance, the statute's facially constitutional. It doesn't matter what other applications may exist, and there have been no as-applied challenges to that statute. Now, we also argued that the district court erred by holding that statute has adverse impacts on federal grazing programs. That determination was based on a fundamental legal misconception about what a water right is. A water right doesn't constitute ownership of the water, control of the water source, doesn't give the water right holder any right to exclude others from using it, to prevent other permittees from using it. But that's what the district court assumed was going on, and that's just wrong. That was explained in Joyce Livestock because the United States made exactly that argument, that, hey, this is going to interfere with our grazing programs and result in a monopolization of the water supply on federal lands. The Idaho Supreme Court said, no, you just don't understand water law and went through why that was wrong. So I think that hopefully encapsulates why we believe section 113.2b is constitutional. So what we'll do then, we'll give you five minutes for rebuttal and also to respond for rebuttal as to his arguments, to the extent he makes any regarding your cross-appeal. Thank you, Your Honor, I appreciate it. And I'll just say we would ask you to deny the United States appeal and grant the cross-appeal. Thank you, counsel. Your Honor, I'll start with the cross-appeal on section 113.2b. That section specifically provides that all stock water rights, quote, on federally owned or managed lands, unquote, that are established under this constitutional method, you know, diversion to beneficial use, quote, shall be appurtenant to the base property. What that says is essentially that there's not going to be any federal water rights on federal land. It doesn't say if a private landowner acquires a water right, it shall be appurtenant to the base property. It just says there shall be none. And this is a mirror image of section 502, which was also struck down, and it was assumed to be when the Idaho legislature adopted this, they assumed section 502 was part of their package. This is just another statute that's governing who gets to own water rights on federal land. If I understand you correctly, the way you interpret this statute, it would not just apply to the Joyce Livestock situation, but it would take the SRBA-decreed rights that were granted to the U.S. and essentially make them appurtenant to the permittees land if this statute were... If it were applied backwards, retroactively. The district court said it's applying prospectively only. And what we're saying is, yes, it probably was intended to apply retroactively, including in adjudications in Idaho where the Joyce issues have not been worked out. There are five other adjudications where there are water rights still to be adjudicated. So the statute could be, and what we think it was intended to be, was to influence those rights that haven't yet been adjudicated. Rights that have been adjudicated, it's not clear you can automatically undo them by legislation. But with respect to prospective operation, if you assume that it's only being applied prospectively, it's not an if-then proposition. The state reads the statute as saying, well, it's only prospective, they say that in the brief, and then they say what it means that if a private owner acquires a water right on federal land, then that will be appurtenant to base property. That's Joyce Livestock, we're fine with that. But that's not what the statute says, and that's not what the legislature says the statute says. If you look at the legislature's brief on page 11, they say the United States can't acquire a water right without their own cattle. And if you also look at the district court's determination, the district court enjoined the statute as applied to the United States. If the state is right, it's prospective only, and it only applies if a private owner gets a water right, and that's all you're looking at, and the statute doesn't influence that decision, then it's not being applied against the United States. So I'm not even sure what they're appealing. But what the district court struck down was application to the United States where it's a mirror image of Section 502, and it's saying United States, you can't acquire water rights. With respect to the other part of the cross-appeal, what Mr. Orwell was talking about was the argument of prior exclusive jurisdiction. And quickly, we're not challenging the decree. We're happy with the decree. We didn't write a statute that attempts to attack the decree, right? What we're trying to do is eliminate these proceedings that are unfair reopeners of the decree, right? Leave the decree. We're good with it. The state argues that just because we've raised issues of decree interpretation that somehow we're trying to attack the decree. As I mentioned in my opening argument, the decree issues are relatively straightforward. There's only one way the decree rights could have been adjudicated, and that's based on permitted use, and ownership can't be in dispute. And with respect to ownership not being in dispute and the state continually coming back to the argument under McInturff v. Shippee, that's just fundamentally different context, right? If the first thing you're trying to figure out is appropriator on land that he's allowed to be on, appropriating water in that context, and there's no agreement between the appropriator and the land owner, right? In that context, McInturff v. Shippee, Joyce, they favor the appropriator, right? They say in that context, unless there's some more evidence to show that the right belongs to the land owner based on an express agreement or some other indication, that we're going to favor the appropriator. But then you have to look at the facts differently, right, when you start with the United States being the owner of the right. If you start with owning the right, the default rule is in favor of the owner because the owner is doing what the owner needs to do to use the right. In that context, the subjective intent, you know, express agreement by a permittee is unnecessary. If Joyce teaches us anything, it's that subjective intent doesn't matter at all. But if it does matter, it's got to be the intent of the water rights owner, right? And we're not just putting people on land. We're permitting them to graze land. You put livestock on land, they're going to drink the water, right? Everybody knows that, right? We're permitting them to use the water in exactly the way it was decreed to us from the same, you know, points of appropriation, same amount, everything the same. We're putting cattle on the land for it to be used. That's our intent. That's a use. They can't get to that through the regular forfeiture statute of Forfeiture for Non-Use 222 because we're using the water, right? We're doing everything we can to use the water. What they want to do is get back to the ownership issue. They needed a different statute to get it back before the courts. Thank you, Your Honors. Unless there are any further questions? No further questions? Nothing. Thank you, Counsel. Five minutes. Thank you, Your Honors. Michael Lohr again. I heard Mr. Smeltzer just say we're permitting them to use the water. The United States doesn't have any authority to permit water use. The United States has decreed water rights that under Idaho law it can use or an authorized agent can use. So the only way the permittees can be using the water under the United States water rights is as agents. And there's just nothing in the record saying they are. There may be if this case goes forward. Now, as far as McInterf, I know the United States argues it's not applicable. So what I'm seeing here is the United States says, yeah, we respect Idaho water laws have going to cut against this, and there's some reason not to apply it. And we just have to go to general principles of property law that you're free to apply. But this is about Idaho water rights and Idaho water law. If it is so obvious, as the United States argues, that these rights were intended for the use of the permittees, for use and benefit of the permittees, the Twin Falls District Court will rule on that. You can be assured of that. It's got unparalleled expertise and experience in Idaho water law. Now, with respect to getting back to the purpose of 224, providing a procedure, I think you asked Judge Owens. The Idaho Supreme Court has noted that forfeiture is not self-effectuating. That was in the Sage Willow case versus IDWR. I believe that's referenced in both of our briefs on both sides. So it's just providing a procedure for a non-self-effectuating aspect of Idaho water law. Now, subsection 4, if it impacts forfeiture in any way, it just acknowledges that there is a defense to it, that it can be avoided through an agency relationship. But again, that was in Idaho law long before the SRBA. I think counsel also argued that 113 prevents the federal government from owning water rights on federal land because of Idaho Code section 42502. I'll note the district court struck that statute as invalid. We have not appealed it. We're not saying the United States has to own livestock to have stock water rights on its own land. That's not Idaho law. And to read that into 113 is to go way beyond the statutory language. And this is a question of facial constitutionality, what the statute says. And finally, I'll say the United States argues that we're not attacking the decrees. I completely disagree, 100% disagree. That is the entire basis of our cross-appeal. The United States is going after its water rights, and it wants this court to make rulings about its water rights. If this court were to grant the relief the United States asked for on the as-applied claims, it would necessarily, unavoidably be concluding that the decrees are not final, that federal courts can revisit the substance and nature of water rights that were decreed by state courts under state law and construe those decrees in such a way as to read into them language that does not appear in them. If we go down that road, then the McCarran Amendment becomes a dead letter, and the SRBA was pointless. And all the investments, the state of Idaho and the water users, including the ranchers in this case, made in the SRBA, become what the Idaho Supreme Court called wasteful expenditures in the Black Canyon case. So this is critically important to us. All we're saying is that there is a court where this type of claim belongs, and it's not here, and it can be completely and fairly adjudicated in the Twin Falls District Court, which has prior exclusive jurisdiction over those questions. Well, I have 50 seconds left, but I think I've covered what I meant to cover, so unless the court has further questions, I'll stand on the briefs. All right. No further questions. I want to thank all the counsel in this case. Complicated case, interesting case. We appreciate its importance, and we appreciate your time today and moving it to 1.30. We also appreciate that. With that, this matter is submitted. This particular panel is adjourned. Judge Song and I will be back tomorrow at 9 a.m. Thank you. Thank you. All rise.
judges: OWENS, SUNG, THOMAS